IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARK ANTHONY PETERSIMES, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | No. 3:14-cv-3220-N-BN |
| | § | |
| WILLIAM STEPHENS, Director | § | |
| Texas Department of Criminal Justice | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Mark Anthony Petersimes, a Texas inmate, has filed an application

for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons explained

below, the application should be denied.

**Applicable Background**

Toward the end of his 12-year sentence for aggravated assault of a child, the

State moved to civilly commit Petitioner under the Civil Commitment of Sexually

Violent Predators Act, *see* TEX. HEALTH & SAFETY CODE ANN. §§ 841.001-.150 (the

"Act"), and, after a jury determined that Petitioner was a sexually violent predator as

defined by the Act, a trial court entered a civil commitment order as to Petitioner on

November 14, 2002, *see Petersimes v. State*, No. 05-10-00227-CR, 2011 WL 2816725,

at *1 (Tex. App. – Dallas July 19, 2011, pet ref'd).

Petitioner's Section 2254 petition challenges his guilty-plea conviction for a

third-degree-felony violation of his civil commitment under the Act.[1] As to this conviction, out of Dallas County, Texas, Petitioner "entered into a plea agreement with the State and pleaded guilty to violating his civil commitment order" and "also pleaded true to an enhancement paragraph" after the trial court denied his motion to quash the indictment, in which he contended that (1) the trial court lacked jurisdiction over the matter, and (2) the Act "constituted an impermissible ex post facto law and, as applied to him, violated the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution, as well as" various provisions of the Texas Constitution. *Id.* at *2.

Petitioner was sentenced to 20 years' incarceration; his conviction was affirmed as modified on direct appeal, *see id.*; and the Texas Court of Criminal Appeals ("CCA") refused his petition for discretionary review, *see Petersimes v. State*, PDR No. 1233-11 (Tex. Crim. App. June 13, 2012).

The CCA also denied Petitioner's state habeas petition as to this conviction without written order. *See Ex parte Petersimes*, WR-61,297-04 (Tex. Crim. App. Aug. 27, 2014); *see also* Dkt. No. 17-24 (action taken sheet); Dkt. No. 17-29 at 112-20 (state trial court findings of fact and conclusions of law, dated Dec. 12, 2013).

## Legal Standards

Through his Section 2254 application [Dkt. No. 3], as amended, *see* Dkt. Nos. 12

---

[1] Petitioner "also pleaded guilty for failing to register as a sex offender and agreed to a five-year sentence" but withdrew his direct appeal of that conviction. 2011 WL 2816725, at *2 n.2 (citing *Petersimes v. State*, No. 05-10-00228-CR, 2010 WL 3565812 (Tex. App. – Dallas Sept. 15, 2010, no pet.) (per curiam)).

& 14, Petitioner presents some 20 claims for relief. Procedural defects prevent the Court from reviewing state court determinations (if any) as to several of those claims. But, because many of the claims that Petitioner asserts require federal review of state court adjudications, including adjudications of Sixth Amendment claims, the undersigned first sets out the following legal standards.

## I.  Review of Merits Adjudications

Where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court adjudication on direct appeal is due the same deference under Section 2254(d) as an adjudication in a state post-conviction proceeding. *See, e.g., Dowthitt v. Johnson*, 230 F.3d 733, 756-57 (5th Cir. 2000) (a finding made by the TCCA on direct appeal was an "issue ... adjudicated on the merits in state proceedings," to be "examine[d] ... with the deference demanded by AEDPA" under "28 U.S.C. § 2254(d)").

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "For purposes of §

2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunctio[n] for which federal habeas relief is the remedy." (internal quotation marks and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)

(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Harrington*, 562 U.S. at 98 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."); *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc))).

In sum, Section 2254 creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98.

## II.    Sixth Amendment Claims

The Court reviews Sixth Amendment claims concerning the alleged ineffective assistance of counsel under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984); *see also Smith v. Robbins*, 528 U.S. 259, 285 (2000) ("the proper standard for evaluating [a] claim that appellate counsel was ineffective ... is that enunciated in *Strickland*" (citing *Smith v. Murray*, 477 U.S. 527, 535-36 (1986))).

Under *Strickland*, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *See* 466 U.S. at 687-88. To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The petitioner also must prove that he was prejudiced by his attorney's substandard performance. *See id.* at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689)).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). Moreover, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that

they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

To demonstrate prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112.

Ineffective-assistance-of-counsel claims are considered mixed questions of law and fact and, therefore, are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated ineffective-assistance claims on the merits, this Court must review Petitioner's claims under the "doubly deferential" standards

of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011). In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)).

In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See id.* at 101-02. Instead, on federal habeas review of a claim that was fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101.

## Analysis

### I.     The Court should not decide statute of limitations issues.

Preliminarily, Respondent contends that all of Petitioner's claims are time barred under the one-year limitations period for federal habeas proceedings under Section 2254, *see* 28 U.S.C. § 2244(d), because Petitioner filed his federal habeas application one day too late, *see* Dkt. No. 23 at 10-13.

While this limitations period is subject to equitable tolling in rare and exceptional circumstances, *see Davis v. Johnson,* 158 F.3d 806, 811 (5th Cir. 1998), "[t]he one-year limitation period in 28 U.S.C. § 2244(d) is not jurisdictional," and

"[t]here is no language in 28 U.S.C. § 2244(d) that would prohibit [a court] from bypassing the issue of timeliness if the claims asserted in the § 2254 Application are without merit," *Linzy v. Faulk*, No. 14-cv-00962-BNB, 2014 WL 5355293, at *3 (D. Colo. Oct. 21, 2014) (citing *Day v. McDonough*, 547 U.S. 198, 205 (2006)); *cf. Aron v. United States*, 291 F.3d 708, 717-18 (11th Cir. 2002) (Ed Carnes, J., concurring) ("[A] district court is not required to rule on whether an asserted statute of limitations bar applies if the § 2255 motion may be denied on other grounds. Sometimes it will be easier for a court to deny relief on the merits than to figure out the issues relating to the statute of limitations. Nothing in the statute prohibits a court from proceeding in that way[.]").

Therefore, here, the Court should address the fairly straightforward claims that Petitioner presents on their merits rather than wade through potentially complicated limitations and tolling issues.

## II.    All claims presented in the amended petition are unexhausted and also procedurally defaulted.

The Court granted Petitioner leave to file an amended petition, *see* Dkt. Nos. 12 & 14, and directed Respondent to address the claims made in the amended petition in his then yet-to-be-filed response, *see* Dkt. No. 14.

The three claims that Petitioner made for the first time in the amended petition are that (1) he thought he was pleading guilty to failure to register as a sex offender, that he never agreed to plead true to an enhancement, and that the plea papers that indicate otherwise are false; (2) because trial and appellate counsel failed to address

these issues, they each provided constitutionally ineffective assistance; and (3) because the enhancement was improper, trial counsel provided constitutionally ineffective assistance by failing to challenge it. *See* Dkt. No. 12.

After the state trial court entered its findings of fact and conclusions of law as to Petitioner's state habeas application, Petitioner attempted to amend his state habeas application to include these claims. *Compare* Dkt. No. 17-29 at 112-20, *with* Dkt. No. 17-27 (Petitioner's motion to amend, dated July 31, 2014). But the CCA denied this motion on August 19, 2014. *See* Dkt. No. 17-27 at 1.

These claims are therefore unexhausted, *see* 28 U.S.C. § 2254(b)(1)(A), as their factual and legal bases have not been presented to the CCA, the highest available state court, for review in a procedurally correct manner. *See Satterwhite v. Lynaugh*, 886 F.2d 90, 92-93 (5th Cir. 1989); *Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir. 1986); *see also Nickleson v. Stephens*, 803 F.3d 748, 753 (5th Cir. 2015) ("where petitioner advances in federal court an argument based on a legal theory distinct from that relied upon in the state court, he fails to satisfy the exhaustion requirement" (quoting *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001) (in turn quoting *Vela v. Estelle*, 708 F.2d 954, 958 n.5 (5th Cir. 1983)))).

Unexhausted claims should be found procedurally barred if "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Texas law precludes successive habeas claims except in narrow circumstances.

*See* TEX. CODE CRIM. PROC. ANN. art. 11.071, § 5. This is a codification of the judicially created Texas abuse-of-the-writ doctrine. *See Barrientes v. Johnson*, 221 F.3d 741, 759 n.10 (5th Cir. 2000). Under this state law, a habeas petitioner is procedurally barred from returning to the Texas courts to exhaust his claims unless the petitioner presents a factual or legal basis for a claim that was previously unavailable or shows that, but for a violation of the United States Constitution, no rational juror would have found for the State. *See id.* at 758 n.9. Therefore, unexhausted claims that could not make the showing required by this state law would be considered procedurally barred from review on the merits in this Court unless an exception is shown. *See Beazley v. Johnson*, 242 F.3d 248, 264 (5th Cir. 2001). An exception to this bar allows federal habeas review if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

The unexhausted claims presented in the amended petition are procedurally barred. Petitioner has not shown that these claims would be allowed in a subsequent habeas proceeding in state court under Texas law. Nor has he asserted the "fundamental miscarriage of justice" exception to procedural bar. Nor has he demonstrated that the ineffective-assistance-of-trial-counsel ("IATC") claims in the amended petition meet the very limited exception to procedural bar created in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) – found applicable to Texas cases in *Trevino v. Thaler*, 133 S. Ct. 1911 (2013) – by demonstrating that the underlying IATC claims

are "substantial.... [T]hat is, that [they have] 'some merit.'" *Crutsinger v. Stephens*, 576 F. App'x 422, 430 (5th Cir. 2014) (per curiam) (quoting *Martinez*, 132 S. Ct. at 1318); *see id.* (noting that, "if a petitioner's [IATC] claim is not substantial enough to earn a [certificate of appealability], it is also not substantial enough to form the basis for excusing the procedural default" (citing *Martinez*, 132 S. Ct. at 1318-19 (in turn citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)))); *see also Speer v. Stephens*, 781 F.3d 784, 785 & n.4 (5th Cir. 2015) (noting the "limited nature" and "narrowness" of the exception).

### III.   Claims 1, 3, 4, 5, and 6 in the original petition have been waived by Petitioner's decision to plead guilty.

As stated above, Petitioner pleaded guilty to the conviction he is now challenging under Section 2254. But several of his claims, not challenging the voluntariness of the guilty plea, are nonjurisdictional and are thus waived by the plea. These claims are: that the prosecutor's placing an "unrelated-impermissible offense in the indictment" was misconduct [Claim 1]; and that trial counsel provided constitutionally ineffective assistance by failing to adequately investigate and challenge the indictment [Claim 3], by failing to challenge the impermissible second-degree felony [Claim 4], by failing to provide a defense plan or strategy other than accepting the plea bargain [Claim 5], and by failing to inform Petitioner of key information about the enhancements [Claim 6].

"A guilty plea, voluntarily entered, waives all nonjurisdictional errors by the trial court that preceded the petitioner's guilty plea." *Young v. Quarterman*, No. SA-06-CA-1003-NN, 2007 WL 2572043, at *27 (W.D. Tex. Sept. 4, 2007) (collecting

cases, including *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.")).

Specifically, claims of ineffective assistance of counsel are waived by a voluntary and intelligent guilty plea "except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea." *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983); *see also Tollett*, 411 U.S. at 265-66. Petitioner's basic allegations – that his trial counsel should have taken further steps to investigate his case and develop a trial strategy, challenge the indictment, and provide further information regarding the enhancement – do not implicate the voluntariness of his plea. Accordingly, they are barred from habeas review. *See Smith*, 711 F.2d at 682 (claims of ineffective assistance based on alleged failure to review evidence, failure to investigate witnesses or the legality of petitioner's arrest, and failure to find "holes" in prosecution case were non-jurisdictional and waived by valid guilty plea); *see also, e.g.*, *Wisener v. Thaler*, No. 4:09-cv-359-Y, 2010 WL 546738, at *3 (N.D. Tex. Feb. 17, 2010) ("[T]o the extent [Petitioner] complains that he is innocent of the charged offense ..., that there was insufficient evidence to support his conviction, and that trial counsel failed to conduct an independent investigation into the facts of his case, to file pretrial motions, and to interview key state witnesses on his behalf, matters unrelated to the voluntariness of

-14-

his plea, the claims are nonjurisdictional and are waived by the plea." (citing *United States v. Broce*, 488 U.S. 563, 573-74 (1989))); *Speed v. United States*, 441 F.2d 1106, 1107 (5th Cir. 1971) (claim that petitioner was insane at the time of the offense is essentially a defense to the merits of the prosecution and is therefore waived by a valid guilty plea).

Similarly, claims of prosecutorial misconduct are also waived by a voluntary and intelligent guilty plea. *See, e.g.*, *Murray v. Collins*, 981 F.2d 1255, 1992 WL 387015, at *3 (5th Cir. 1992) (per curiam) (citing *Smith*, 711 F.2d at 682).

But, to the extent that Petitioner's sixth claim, in which he contends that his trial counsel was constitutionally ineffective because he failed to inform Petitioner of key information about the enhancements, somehow implicates the voluntariness of his guilty plea, Petitioner has not shown that the state court's denial of this claim, *see* Dkt. No. 17-29 at 113-14, was an unreasonable application of *Strickland*, *see Harrington*, 562 U.S. at 101 (the "pivotal question" for a federal court reviewing a state court's adjudication of Sixth Amendment claims is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable"). In fact, the state court correctly found that this claim fails because it is premised on an incorrect statement of fact.

The basis of this claim appears to be Petitioner's belief that the State lost the ability to enhance his sentence, *see* Dkt. No. 4 at 76-81, but as trial counsel testified in the state habeas proceedings:

This is an incorrect statement. Mr. Petersimes had multiple prior

consecutive penitentiary trips which could have been used to enhance his penalty range to a habitual offender. Pursuant to the plea bargain the State abandoned one of the two enhancement paragraphs in F06-22392 and both enhancement paragraphs in F06-65425 in order to effectuate the plea bargain that was eventually approved of by Mr. Petersimes and the Court.

Dkt. No. 17-29 at 119.

Considering this sworn testimony – the basis of the state court's denial of this claim – Petitioner has not shown that the state court's decision as to this claim constitutes an unreasonable application of clearly established federal law or is based on an unreasonable determination of the facts in light of the evidence before the state court. *See Garza v. Stephens*, 738 F.3d 669, 680 (5th Cir. 2013) (citing 28 U.S.C. § 2254(d)(1)-(2)).

### IV.   Claims 2 and 9 solely concern questions of state law and are thus not cognizable on federal habeas review.

Petitioner's second claim is that the trial court erred by not quashing the indictment on the basis of his motion, in which he argued that the indictment's header recited the wrong offense "FAIL REG SEX OFFEND CIVIL," while the body of the indictment correctly charged him with violation of his civil commitment order.

"The sufficiency of a state indictment is not a matter for federal habeas corpus review unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction." *Alexander v. McCotter*, 775 F.2d 595, 598 (1985); *see also Davis v. Thaler*, No. 3:07-cv-167-B, 2010 WL 2034791, at *2 (N.D. Tex. Mar. 26, 2010), *rec. adopted*, 2010 WL 2034777 (N.D. Tex. May 19, 2010) ("An indictment that sets forth the elements of the offense in language clear enough to enable the defendant to

plead a bar in jeopardy does not raise a jurisdictional defect."(citing *Alexander*, 775 F.2d at 599)); *McKay v. Collins*, 12 F.3d 66, 69 (5th Cir. 1994) ("An indictment should be found sufficient unless no reasonable construction of the indictment would charge the offense for which the defendant has been convicted." (citing *United States v. Salinas*, 956 F.2d 80, 82 (5th Cir. 1992))).

Here, Petitioner raised this claim in his state habeas petition, *see* Dkt. No. 17-29 at 112 ("Applicant alleges that the trial court improperly denied the motion to quash."), "and as the petition was denied without written order, the highest state court has determined, at least implicitly, that the indictment is sufficient, so [Petitoner's] claim is thus not cognizable under § 2254." *Odham v. Scott*, 56 F.3d 1384, 1995 WL 337647, at *2 (5th Cir. 1995) (per curiam) (citing *Alexander*, 775 F.2d at 599; *McKay*, 12 F.3d at 68).

Petitioner's ninth claim for relief is that his right to due process was violated because the trial court lacked subject matter jurisdiction over his case. Petitioner raised this claim on direct appeal, and the Dallas Court of Appeals analyzed this issue and concluded that,

> under the rules of general jurisdiction, the trial court had jurisdiction to proceed on the criminal charge related to Petersimes's violation of his civil commitment order, a third-degree felony. *See* TEX. CODE CRIM. PROC. ANN. art. 4.05 (West 2005) (district courts and criminal district courts have original jurisdiction in criminal cases of grade felony); *id.* art. 13.18 (venue proper in county in which offense committed). The trial court therefore properly denied Petersimes's motion to quash the indictment on jurisdictional grounds. We overrule his first point of error.

*Petersimes*, 2011 WL 2816725, at *4.

While Petitioner invokes the Due Process Clause, he has alleged no violation of federal law but instead solely challenges the jurisdiction and venue of a state criminal court under state law. Therefore, this claim too is "outside the province of a federal court considering habeas challenges." *Boyd v. Thaler*, No. 3:11-cv-26-B-BN, 2013 WL 1187148, at *12 (N.D. Tex. Jan. 29, 2013), *rec. adopted*, 2013 WL 1189221 (N.D. Tex. Mar. 22, 2013) (citing *Trevino v. Johnson*, 168 F.3d 173, 184 (5th Cir. 1999); *Weeks v. Scott*, 55 F.3d 1059, 1063-64 (5th Cir. 1995)); *see also Charles v. Thaler*, 629 F.3d 494, 500 (5th Cir. 2011) (noting that a federal habeas court's function is not to review a state's interpretation of its own law).

## V. Petitioner has not shown that the determination as to his appellate counsel claim constitutes either an unreasonable application of *Stickland* or an unreasonable determination of the evidence [Claim 7].

Petitioner asserts that his appellate counsel provided constitutionally ineffective assistance because his "trial counsel interject[ed] himself as co-counsel on direct appeal where he [had] an ... undue influence over lead appellate counsel." Dkt. No. 3 at 8. This claim was presented in the state habeas proceedings, in the context that trial counsel was ineffective because he "interjected himself into the appeal and influenced appellate counsel regarding what issues to raise." Dkt. No. 17-29 at 113.

In denying the claim, *see id.* at 114, the state court obtained and relied on trial counsel's sworn affidavit, in which he testified:

> I researched and wrote a twenty-two page brief thoroughly reviewing the [Sexually Violent Offender or] SVO Statute and a litany of challenges to its appropriateness. The brief was filed with the court and argued prior to Mr. Petersimes['s] plea. The brief and its attachments are available in

the Court's file. The brief and the arguments were discussed at length and in collaboration with Mr. Petersimes, who had familiarized himself with some of the legal arguments surrounding civil commitment of sexually violent offenders. Mr. Petersimes approved of the final draft. We also discussed that in all likelihood the trial court would deny the motion to quash and any relief would have to be sought in the appellate courts. He understood that the trial brief would in essence be the same appellate brief because the arguments raised at the trial court were the ones preserved for appeal. It was discussed with Mr. Petersimes and it was his wish for me to stay involved with and pursue the appeal because I was more familiar with the legal arguments.

...

Mr. Petersimes claims that trial and appellate counsel were ineffective because trial counsel participated in the determination of the issues to be raised in his appeal, and because the appellate brief was nothing more than a duplicate of the brief filed in the trial court.... [T]his was the trial strategy that was discussed with Mr. Petersimes. His correspondence during the direct appeal was addressed to both Ms. Kathleen Walsh and myself. It was Mr. Petersimes['s] wish that I participate in the appeal because I had done the extensive research behind the appellate arguments. Prior to the plea, we discussed that the trial brief would in essence be the appellate brief because those were the issues we saw that could be raised and would be preserved for appeal.

In addition to my review of the record and research pertaining to the issues to be raised on appeal, Ms. Walsh conducted her own independent review of the trial proceedings and did her own research of the applicable law. Ms. Walsh and I had several conferences about the case and the appeal, and her evaluation of the issues and the arguments to be made on appeal concurred with my evaluation. Ms. Walsh agreed that the trial brief could be used as the basis for the appellate brief because of the comprehensive and through treatment of the issues to be presented to the appellate court. Ms. Walsh also did an extensive review for the trial brief, edited it appropriately for submission to the court of appeals, and added a point of error pertaining to the correction of the erroneous recitations in the written judgment.

*Id.* at 117-18, 119-20.

In light of this testimony, Petitioner has not shown "that the state habeas court's

conclusion on this claim amounted to an unreasonable application of *Strickland* or an

unreasonable determination of the evidence." *Garza*, 738 F.3d at 680.

### VI. Petitioner has not shown that the determination as to his *nunc pro tunc* claim constitutes either an unreasonable application of clearly established federal law or an unreasonable determination of the evidence [Claim 8].

Petitioner again invokes his right to due process to challenge the Dallas Court of Appeals's issuance of a *nunc pro tunc* order reforming the trial court's inaccurate judgment. As that court explained this issue on direct appeal:

> In his ninth point of error, Petersimes asserts the trial court's judgment is inaccurate and should be reformed. Specifically, he contends the judgment reflects an incorrect statute and level of offense and does not reflect he pleaded true to one enhancement paragraph. We agree.

*Petersimes*, 2011 WL 2816725, at *12.

As the Dallas Court of Appeals further explained, it possesses "the authority to modify a trial court's judgment and affirm it as modified." *Id.* (citing TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993)). That court also "may do so when [it has] the necessary information and evidence." *Id.* (citing *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App. – Dallas 1991, pet. ref'd); *Storr v. State*, 126 S.W .3d 647, 654-55 (Tex. App. – Houston [14th Dist.] 2004, pet. ref'd)); *see also Reed v. Dretke*, No. 3:05-cv-1427-N, 2006 WL 757879, at *3 (N.D. Tex. Mar. 20, 2006) ("Under Texas state law where a written judgment contains an erroneous recitation an appellate court has the authority to reform and correct the written judgment." (citations omitted)).

> Petersimes was charged with violating his civil commitment under section 841.085(a) of the health and safety code by failing to submit to GPS tracking and by changing his residence without authorization. An

offense under this section is a third-degree felony. TEX. HEALTH & SAFETY CODE ANN. § 841.085(b). Yet the trial court's judgment recites Petersimes was convicted under section 62.10 of the "penal code." It also recites he was convicted of a second-degree felony.

The record further shows the State sought to enhance Petersimes's punishment range with two prior felony convictions. At the plea hearing, Petersimes's counsel informed the trial court Petersimes pleaded true "on the enhancement paragraphs that have been submitted to the Court." The plea agreement also shows Petersimes pleaded to true to at least one enhancement paragraph. The trial court's judgment, however, does not reflect Petersimes's plea of true to the enhancements nor does it reflect the trial court's finding on the enhancements.

In its brief, the State suggests there was a motion to dismiss one of the enhancements it sought to establish and points to the docket sheet, which states the "court ordered enhancement dismissal on state's motion." Although the record does not include a motion to dismiss an enhancement paragraph, both sides agree Petersimes pleaded true to one enhancement paragraph. Therefore, we will accept this assertion as true. *See Pitts v. State*, 916 S.W.2d 507, 510 (Tex. Crim. App. 1996) (accepting as true factual assertions made by counsel which were not disputed by opposing counsel).

Finally, while the trial court did not make an express finding as to the enhancement paragraph, it is obvious from Petersimes's sentence that punishment for his third-degree felony was enhanced; the trial court assessed his punishment at twenty years' confinement, a range above the two to ten years for this offense without enhancement. Therefore, we will imply a finding of true to the enhancement paragraph. *See Almand v. State*, 536 S.W.2d 377, 379 (Tex. Crim. App. 1976); *Garner v. State*, 858 S.W.2d 656, 659–60 (Tex. App. – Fort Worth 1993, pet. ref'd).

On this record, we modify the trial court's judgment to reflect Petersimes was convicted under section 841.085 of the health and safety code, a third-degree offense. We also modify the trial court's judgment to reflect Petersimes pleaded true to one enhancement paragraph and the trial court's finding of true on the punishment enhancement. We sustain his ninth point of error.

*Petersimes*, 2011 WL 2816725, at *12-*13 (footnote omitted).

Deferring to the state court's interpretation and application of its own law, Petitioner has not shown that this decision constitutes an unreasonable application of clearly established federal law or is based on an unreasonable determination of the facts in light of the evidence before the state court. *See Summerville v. Thaler*, No. 4:12-cv-547-A, 2013 WL 238842, at *17 (N.D. Tex. Jan. 22, 2013) (analyzing a similar challenge and concluding that, there, "the trial court validly entered the *nunc pro tunc* orders correcting what it found to be a clerical error" (citations omitted)).

### VII.   Petitioner fails to allege a plausible Equal Protection Claim [Claim 12].

Petitioner's twelfth claim is that the Act violates the Equal Protection Clause by holding sexually violent predators to a different standard than other civilly committed persons. *See* Dkt. No. 3 at 9; *see also* Dkt. No. 4-1 at 49-65. It is not clear whether this claim has been properly raised and exhausted in the state courts. But, regardless, it should be denied by this Court.

To establish an equal protection claim, a petitioner "must prove the existence of purposeful discrimination motivating the state action which caused the complained-of injury." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) (internal quotation marks omitted); *see also Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (plaintiff alleging equal protection claim must show he has been intentionally treated differently from others similarly situated and there is no rational basis for difference in treatment).

Another judge of this Court has addressed a similar claim concerning the Act in

the context of a complaint under 42 U.S.C. § 1983:

> Plaintiff contends that he has more onerous restrictions on his liberty than do his counterparts who are on mandatory supervision and parole, and that the differences amount to a violation of his Fourteenth Amendment right to equal protection under the laws. The equal protection clause requires that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Because plaintiff is not a member of a protected or suspect class, he must allege that the regulation impinging on his rights is not rationally related to the state's interest in treating him and protecting the public. *See Wottlin v. Fleming*, 136 F.3d 1032, 1036 (5th Cir. 1998) (stating that sex offenders are not a protected or suspect class, and thus a prison regulation that impinges on a convicted sex offender's constitutional rights is only subject to a rational basis review); *Stauffer v. Gearhart*, No. H-08-1587, 2011 WL 2490062 (S.D. Tex. June 20, 2011) (applying *Wottlin* to a sex offender treatment program).

*Brown v. Thaler*, No. 4:12-cv-698-A, 2013 WL 1104268, at *8 (N.D. Tex. Mar. 14, 2013).

Here, Petitioner's conclusory Equal Protection claim lacks merit because he fails to acknowledge that sex offenders are not a protected or suspect class and further fails to demonstrate that the Act is not rationally related to a legitimate state interest.

**VIII. Petitioner has not shown that the determinations as to his various other claims concerning the Act constitute either unreasonable applications of clearly established federal law or unreasonable determinations of the evidence [Claims 10, 11, 13, 14, 15, 16, & 17].**

Petitioner's final claims concern the state court determinations as to his challenges to the Act – that the Act violates the Due Process Clause because it is punitive [Claim 10]; that the Act is void for vagueness [Claim 11]; that the Act constitutes cruel and unusual punishment [Claim 13]; that the Act violates the Fifth Amendment right against self-incrimination [Claim 14]; that the Act violates the *Ex Post Facto* Clause [Claim 15]; and that the Act violates the Double Jeopardy Clause (1)

because, under the guise of a failed treatment plan, past behaviors are punishable anew [Claim 16], and (2) because prosecutors can obtain two punishments for one crime [Claim 17].

On state habeas review, the court noted Petitioner's challenges to the Act as unconstitutional – challenges previously raised on direct appeal – but found that his challenge to the Dallas Court of Appeals's decision is not cognizable and that the proper method of challenging that decision would have been "to file a Petition for Discretionary Review." Dkt. No. 17-29 at 113-14. As such, this Court "looks through" the state habeas decision to the Dallas Court of Appeals's decision as "the last reasoned opinion" issued as to these claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 804 n.3 (1991) ("Since a later state decision based upon ineligibility for further state review neither rests upon procedural default nor lifts a preexisting procedural default, its effect upon the availability of federal habeas is nil – which is precisely the effect accorded by the 'look-through' presumption."); *see also Leachman v. Stephens*, 581 F. App'x 390, 395 (5th Cir. 2014) ("a state habeas decision [ ] found that the petitioner's argument[ ] has been 'previously considered and rejected' on direct appeal[, and] ... 'in light of that determination' [this Court should] 'examine the last clear state court decision of any substance'" (quoting *Divers v. Cain*, 698 F.3d 211, 216 (5th Cir. 2012))).

The undersigned has reviewed the Dallas Court of Appeals's extensive analysis as to Petitioner's challenges to the Act, *see Petersimes*, 2011 WL 2816725, at *5-*12, and finds that Petitioner has not shown that the applicable determinations made by that court constitute unreasonable applications of clearly established federal law, *cf.*

*Brown*, 2013 WL 1104268, at *6 (noting that the United States Supreme Court "has repeatedly upheld civil commitment programs and laws regarding sexually violent predators that are similar to Texas's laws and programs" and that "Texas courts have also upheld provisions for civil commitment of sexually violent predators and implementation of the provisions" (citing *United States v. Comstock*, 560 U.S. 126 (2010); *Kansas v. Crane*, 534 U.S. 407 (2002); *Seling v. Young*, 531 U.S. 250, 262, 267 (2001); *Kansas v. Hendricks*, 521 U.S. 346 (1997); *In re Commitment of Fisher*, 164 S.W.3d 637 (Tex. 2005); *Beasley v. Molett*, 95 S.W.3d 590, 607-08 (Tex. App. – Beaumont 2002, pet. ref'd))).

## Recommendation

Petitioner's application for writ of habeas corpus should be denied.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. *See Douglass v.*

*United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: March 28, 2016

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE